FRANK STANWOOD *vs.* JOHN W. TREFETHEN.

Cumberland. Opinion February 4, 1892.

*Agent. Notice. Payment.*

</div>

The owner of a cargo of fish, permitting the master of the vessel on which the fish were laden to sell the same, wrote the purchaser, as follows: " Should the schooner Midnight now on Georges sell fresh fish in Portland, will you please see that the check is made payable to my order, as the captain is a stranger to me. By so doing, you will confer a favor." *Held*, that the notice was sufficient to entitle the owner to recover the price of the fish of the purchaser. who notwithstanding the notice paid the master, who absconded with the funds.

ON REPORT.

This was an action of assumpsit upon an account annexed to recover the sum of six hundred and nine dollars and forty-six cents, being the amount which the plaintiff claimed of the defendant for a fare of fish of the schooner Midnight. The fish were sold to the defendant by the master, and plaintiff was owner of the vessel. The case came up on report from the Superior Court for Cumberland County.

After the master sold the fish to the defendant he collected the money and absconded with it. The plaintiff claimed, under the facts which are stated in the opinion, that the payment of the money was wrongfully made by the defendant to the master, and that he was not bound by the payment.

*F. V. Chase*, for plaintiff.

Property and right of sale was in plaintiff. Captain in making the sale was merely owner's agent. Principles of agency govern. *Wickersham* v. *Southard*, 67 Maine, 595; *Lewis* v. *Chadbourne*, 54 Maine, 484, and cases cited. Plaintiff not bound by payment to the master, having notified defendant. Sto. Agency, 429; *Trainer* v. *Morrison*, 78 Maine, 160, and cases cited.

*N. and H. B. Cleaves* and *S. C. Perry*, for defendant.

The master is the agent of the owners of the vessel in all matters embraced in the scope of his appointment and for all purposes connected with the ordinary employment of the vessel. The owners are bound by his contract. The owners may constitute him a general agent to exercise his best judgment in the disposition of the cargo and the purchase of a return cargo. The master of a fishing vessel is agent for the owners. The master had the entire control and management of this schooner so far as related to the disposition of the fare of fish, and also the express authority and assent of the owner. *Wickersham* v. *Southard*, 67 Maine, 595 ; *Giles* v. *Vigoreux*, 35 Maine, 300 ; *Bryant* v. *Moore*, 26 Maine, 84. The case further shows the custom which exists at Portland as to dealing with fishing schooners from Gloucester, purchasing of the master and making payment to him.

Payment to the agent is same as if made to the principal. Plaintiff did not forbid defendant from paying the money to the master. The letter is not in the form of a prohibition, it authorizes the master to sell and does not revoke authority to receive payment. Defendant never agreed to make the check, · as requested, to plaintiff's order. Owner liable for acts of the master. *Patten* v. *Percy*, 77 Maine, 327 ; *Packer* v. *Hinckley L. Works*, 122 Mass. 484. If the owner, after having put in charge of his vessel a captain whom he is unwilling to trust personally, holds him out to the general public as his authorized agent, he should not be permitted to deny his authority to the detriment of one who has dealt with him in good faith, and with reason to believe from the acts of the owner that he was justified in so doing.

The plaintiff by his acts is now estopped to deny the authority of his agent. *Stratton* v. *Todd*, 82 Maine, 149 ; *Taylor* v. *Mason*, 80 Maine, 496.

PETERS, C. J.   The plaintiff, a resident of Gloucester, Massachusetts, and owner of a fishing vessel, allowed the master of the vessel to take her on a voyage for the purpose of

procuring a fare of fresh fish for the market. The master, after procuring the fish, sailed the vessel to Portland, sold the fare there to the defendant, a principal dealer in fish at that place, receiving full price for the same, immediately abandoned the vessel and absconded with the funds to parts unknown, and has not been heard of by any of the parties since. It was admitted at the argument that the plaintiff was the owner of the fish. He sues to recover the price for the same, and the only question is whether the defendant had such notice from the plaintiff as should have prevented his paying the money to the master.

Shortly before the vessel arrived in Portland the plaintiff wrote the defendant's house the following communication: " Office of Frank Stanwood, wholesale dealer in dry and pickled fish and smoked halibut.

" Gloucester, Mass.,            189

" Messrs. J. W. Trefethen & Co., Portland, Me.    Gentlemen:

" Should the sch. "Midnight," now on Georges sell fresh fish and hal. in Portland, will you please see that the check is made payable to my order, as the Capt. is a stranger to me. By so doing you will confer a favor.

" Truly yours,      Frank Stanwood."

We think this was a sufficient notice, and that the defendant should have heeded it. The letter makes a request giving the writer's reason for making it. It is none the less positive because couched in courteous terms. Mercantile fairness required that the defendant should consult the owner before making payment, and he could easily have done so in a few moments' time by using the telegraphic wire. But the temptation to deal with the master rather that the owner proved too great. The defendant admits as much by his subsequent acts. The following correspondence between the parties shows it.

" Feb. 17, 1890.

" To J. W. Trefethen, Portland, Me.:

" Is the schooner " Midnight" still in Portland, and is everything right.                     Frank Stanwood."

"Portland, Me., Feb. 17, 1890.

"To Frank Stanwood :

"Schooner here. Captain missing with money. See letter by mail."

"Portland, Me., Feb. 15, 1890.

"Mr. Frank Stanwood :

"Dear sir : Your favor came to hand and your vessel arrived yesterday. I bought the fish. The trip amounted to $609.46. I showed the captain your letter, and he insisted upon having the bills, and as I had no power to do different than to pay him the same, I paid him the bills. He said he was going right home and that he wanted to show you that he could do the business for you. That was all I could do.

"Yours, respectfully,

"J. W. Trefethen, C. N. T."

"Portland, Me., Feb. 17, 1890.

"Mr. Frank Stanwood :

"Dear sir. You will please find enclosed a bill of the fish sold by your schooner "Midnight" to me Feb. 14. I understand the captain has cleared out this morning and your crew has telegraphed you what they shall do with the vessel.

"I want to explain to you more fully why I paid the captain in bills. Of course I had no direct orders from you to not pay the captain. You only stated that I would confer a favor by sending a check payable to your order as you were not acquainted with the captain. I showed the captain your letter and told him that I would rather send the check as you wished. He said that he wanted to show you that he was capable of doing your business for you and wanted the bills. There was a man here who I am well acquainted with and who knew the captain well, said he was all right and that he had been fishing with him a year. So on the strength of his recommendation, as you only stated he was a stranger to you, I paid him the bills not knowing how I could do differently. I went to the custom house with the captain to get a permit to get home with as his papers had run out, and he told the crew to get aboard as he was going out in twenty minutes.

"Am very sorry this thing has happened and hope you will see the position in which I was placed and not blame me.

<div style="text-align:center">"Yours, resp'y,		J. W. Trefethen."</div>

There is a good deal of unconscious admission in the last letter. If the defendant was induced to pay the money because a man he knew recommended it, as he says, then it was not because he had not notice from the owner. It is manifest that his own judgment was averse to his act, and that he concluded to take the risk of it, induced by the importunity of the master and the influence of his friend. His prudence was overcome too easily. The counsel for defendant calls attention to the fact that the master sent a telegraphic dispatch to the owner, inquiring the price of fresh fish in Gloucester, and exhibited the reply to the defendant. That afforded no excuse for defendant's conduct. The master could sell, but the defendant was not permitted to make payment to him. As the master could send a message, so could the defendant have sent. Much that is said in the opinion in *Knapp* v. *Bailey*, 79 Maine, 195, is pertinent here.				*Defendant defaulted.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.